IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | Crim. No. CCB-01-188 |
| | * | |
| ARMISTEAD MYERS | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### MEMORANDUM

Armistead Myers is a federal prisoner who is serving a 294-month sentence for his participation in a number of robberies in the late 1990s. Now pending is Myers's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) (ECF 100). The government opposes the motion, (ECF 109), and Myers has replied, (ECF 111).[1] For the reasons explained below, the motion will be denied.

### BACKGROUND

In 2001, Myers was charged with conspiracy to obstruct commerce by robbery, in violation of the Hobbs Act, 18 U.S.C. § 1951 (Count 1) and brandishing a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c) (Count 2). (ECF 80-2, Indictment). Myers was tried by a jury on both counts. At trial, the government presented evidence that Myers, along with three co-conspirators, committed or attempted to commit nine robberies of various commercial establishments in Columbia and Westminster, Maryland, between December 1997 and February 1999, and that Myers was armed during seven of those robberies. During one of those robberies, Myers brandished an AK-47 rifle. The government also presented evidence that Myers was one of two primary planners and leaders of the robbery conspiracy. On January 31, 2002, Myers was found guilty by a jury of both counts. (ECF 80-4, Verdict Form).

---

[1] Myers also has submitted, through counsel, two notices of supplemental authority (ECFs 112, 113), which the court has considered.

1

At sentencing, because of prior convictions for robbery and distribution of a controlled substance, Myers was considered a career offender under the sentencing guidelines. The court sentenced Myers as a career offender, determining that he had a total offense level of 32, a criminal history category of VI, and a resulting guideline range for Count 1 of 210 to 262 months. Prior to the application of the career offender designation, Myers fell within a criminal history category of V, driven by prior offenses for robbery, gun possession, theft, concealment, and distribution of a controlled substance, and the fact that he was on parole at the time of the offense. At the time, the court did not have the discretion to impose a sentence on Count 1 outside the guideline range of 210 to 262 months. *See United States v. Booker*, 543 U.S. 220 (2005). And the § 924(c) count carried a mandatory, consecutive sentence of seven years, or 84 months. Finding that "a sentence at the low end" of the guideline range was "sufficient to serve the purposes of sentencing" (ECF 102-1, Statement of Reasons), the court sentenced Myers to a total term of imprisonment of 294 months (ECF 50, Amended Judgment).

In December 2018, Congress enacted the First Step Act. *See* Pub. L. No. 115-391, 132 Stat. 5194. As part of the Act, Congress amended 18 U.S.C. § 3582(c), which empowers courts to reduce a term of imprisonment if "extraordinary and compelling reasons warrant such a reduction." *See* 18 U.S.C. § 3582(c)(1)(A)(i); Pub. L. 115-391, Title VI, § 603(b), Dec. 21, 2018, 132 Stat. 5239. Before the First Step Act was enacted, a court could review a prisoner's sentence pursuant to § 3582(c)(1)(A) only "upon motion of the Director of the Bureau of Prisons" ("BOP"). *Id.* But under the amended statute, a court may conduct such a review also "upon motion of the defendant," if the defendant has exhausted all administrative remedies to appeal the BOP's failure to bring a motion, or if thirty days have lapsed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" *Id.* The court may authorize compassionate release if, after considering the factors set

forth in 18 U.S.C. § 3553(a), the court finds that "extraordinary and compelling reasons" warrant it. *See* 18 U.S.C. § 3582(c)(1)(A)(i).

Myers submitted a request for compassionate release to the warden of FCI Schuylkill on October 30, 2020; his request was denied on November 18, 2020. (ECFs 100-2, 100-3). The government does not contest that Myers has properly exhausted his administrative remedies. Thus, the only issues are (1) whether "extraordinary and compelling reasons" warrant the reduction of Myers's sentence and (2) if there is such a reason, whether the § 3553(a) factors weigh in favor of a sentence reduction.

**DISCUSSION**

Under 28 U.S.C. § 994(t) the United States Sentencing Commission has the responsibility to define "what should be considered extraordinary and compelling reasons for sentence reduction" under § 3582(c)(1)(A). The most recent Sentencing Commission policy statement defining "extraordinary and compelling reasons" for sentence reduction, Guideline § 1B1.13, predates the First Step Act and, as the Fourth Circuit recently held, is not a policy statement that applies to motions for compassionate release brought by defendants, because its plain text "constrains the entire policy statement to motions filed solely by the BOP, . . . and not by defendants themselves." *United States v. McCoy*, 981 F.3d 271, 281–82 (4th Cir. 2020) (internal quotation marks and citation omitted). In the absence of an "applicable policy statement[] issued by the Sentencing Commission" concerning what may be an "extraordinary and compelling reason" for compassionate release when a defendant brings a motion under § 3582(c)(1)(A), "district courts are 'empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise.'" *Id.* at 284 (quoting *United States v. Zullo*, 976 F.3d 228, 230 (2d Cir. 2020)).

Myers argues that a "unique confluence" of factors related to his sentence, his individual characteristics, and the nature and circumstances of his offense constitute "extraordinary and

3

compelling" reasons for release. (ECF 100 at 6). .Specifically, Myers contends that significant changes to federal sentencing law have created disparities between the sentence Myers received and the sentence he would receive today and between the sentence he received and those of his co-conspirators, that he was relatively young at the time of his offense, that he has already served a lengthy term of incarceration, that he has a strong record of rehabilitation, and that, when considered together, these factors establish his right to relief, citing *McCoy*, 981 F.3d at 286. The government treats each of these factors individually and argues that none of them by themselves constitute an extraordinary and compelling reason for release.

In *McCoy*, the Fourth Circuit affirmed four district court orders granting the motions for reduction of sentence under § 3582(c)(1)(A) of four individual defendants and reducing their sentences to time served. *Id.* at 288. Each defendant had been convicted of multiple violations of 18 U.S.C. § 924(c) associated with their convictions for robbery. At the time of their sentencings, sentences under § 924(c) were "stacked," or imposed consecutively on each other, resulting in mandatory minimums for the defendants ranging from thirty-five to fifty-three years of imprisonment. Because the First Step Act ended the practice of stacking § 924(c) convictions, were the defendants resentenced today, their sentences would have been dramatically shorter—a striking thirty years shorter for three of the defendants and 200 months shorter for one. *Id.* at 285. After determining that the district courts possessed the discretion to consider "any extraordinary and compelling reason for release that a defendant might raise," *id.* at 284, the Fourth Circuit held that in considering whether the sentencing disparities met that standard, the district courts had appropriately considered "two distinct features" of the defendants' § 924(c) sentences, *id.* at 285. First, the sentences were unusually and grossly lengthy in comparison to more serious offenses, including murder, and were driven almost entirely by § 924(c) stacking. *Id.* Second, the sentences were grossly disproportionate to sentences imposed today under § 924(c) due to intervening changes in the law. *Id.* at 285–86. Additionally, the

4

court noted that the district courts' decisions were the product of an "individualized assessment" of each defendant's sentence that also took into consideration the significant sentences they already had served, their relative youth at the time of the offenses, and their "excellent institutional records" and "substantial steps toward rehabilitation." *Id.* at 286.

In sum, *McCoy* teaches that in considering a defendant's motion for sentence reduction based on subsequent changes in the law that create sentencing disparities, the court should conduct an individualized and holistic assessment of the defendant's circumstances to determine whether there are extraordinary and compelling reasons for relief. The district court may appropriately consider at least the following four factors in making such assessment: (1) whether the sentence imposed is grossly disproportionate to a sentence the defendant would likely receive if sentenced today, signifying that the sentence is "dramatically longer than necessary or fair;" (2) whether the sentence imposed is unusually or grossly lengthy in comparison to sentences currently imposed for similar or more serious offenses; (3) the length of the sentence the defendant already has served; and (4) other personal characteristics of the defendant, which may include the defendant's relative youth at the time of the offense and their post-sentencing conduct in the BOP. *Id.* at 285–86. The court will examine each factor in turn as applied to Myers and will also consider the additional disparity Myers raises between his sentence and those of his co-conspirators. The court will then consider the factors as a whole.

First, though intervening changes in the law have altered the legal framework under which Myers was sentenced, the 294-month sentence imposed is not dramatically different from the range Myers would likely face today. Myers correctly identifies that the guideline sentence imposed is no longer mandatory, *see United States v. Booker*, 543 U.S. 220 (2005), and that it is doubtful whether Myers would still qualify as a career offender. *See United States v. Green*, 996 F.3d 176 (4th Cir.

2021) (holding that Hobbs Act robbery does not qualify as a crime of violence under U.S.S.G. § 4B1.2 and therefore cannot serve as a predicate for a career offender designation).

But even if Myers would not qualify as a career offender if he were sentenced today, the parties agree that his lowest advisory range for Count One would be 168 to 210 months, and Count Two would still carry a mandatory consecutive 84-month minimum sentence, leading to a total guideline range of 252 to 294 months. The 294-month sentence Myers is serving is within that range, hardly disproportionate or unduly harsh when compared to the sentence he would likely receive today. Were Myers sentenced to the bottom of the guideline range that might be applicable today, 252 months, this would represent a reduction of approximately 3.5 years, or 14 percent. The court contrasts this landscape with the circumstances in the *McCoy* cases, in which eliminating the practice of § 924(c) stacking nearly halved the advisory ranges for those defendants. *See McCoy*, 981 F.3d at 285; *see also United States v. Jones*, 482 F. Supp. 3d 969, 979 (N.D. Cal. 2020) (compassionate release granted where stacked § 924(c) sentence defendant received was more than twice the length he would likely receive without stacking). Similarly, in the cases Myers cites in which courts have found sentencing disparities to constitute an extraordinary and compelling reason for release, the sentences imposed were drastically out of step with modern sentencing practices, *see, e.g.*, *United States v. Vargas*, --- F. Supp. 3d ----, 2020 WL 6886646, at *4–6 (S.D.N.Y. Nov. 24, 2020) (mandatory application of career offender designation that resulted in a sentence approximately fifty percent greater than the defendant's initial guideline range was "exceptionally harsh" and unlikely to be imposed today); *United States v. Vigneau*, 473 F. Supp. 3d 31, 36–39 (D.R.I. 2020) (defendant's pre-*Booker* 365-month sentence for various non-violent offenses related to distribution of marijuana unusually lengthy compared with average sentences for marijuana trafficking and defendant not likely to be charged with continuing criminal enterprise, which carried a twenty-year-mandatory minimum, today); *United States v. Derricoatte*, No. 1:11-CR-91-10, 2020 WL 5629095, at *4 (N.D. Ohio Sept.

6

21, 2020) (in combination with other factors, that removal of career offender designation would have reduced defendant's guideline sentence by seventy five percent was an extraordinary and compelling reason for release); *United States v. Smith*, ECF No. 76 at 3–5, 14-CF-189-TSC (D.D.C. May 14, 2020) (in combination with other factors, that removal of career offender designation would have reduced defendant's guideline sentence by half was an extraordinary and compelling reason for release), and, in some cases, the defendant's age or health conditions, particularly in light of the current coronavirus pandemic, provided additional reasons for relief, *see, e.g.*, *United States v. Perez*, No. 88-10094-1-JTM, 2020 WL 1180719, at *3 (D. Kan. Mar. 11, 2020) (United States conceded that there were extraordinary and compelling reasons for relief where life sentence for drug trafficking offense was dramatically high, the defendant was over seventy years old, and he had served more than 30 years in prison); *United States v. Parker*, 461 F. Supp. 3d 966, 981 (C.D. Cal. 2020) ("severity of Parker's life sentence, imposed under a sentencing regime that is no longer valid, coupled with his deteriorating health, which may be further exacerbated by this incarceration during the COVID-19 pandemic" presented extraordinary and compelling circumstances for release); *United States v. Vasquez-Lujano*, No. 95-cr-00045-BLW, 2020 WL 6384722, at *3 (D. Idaho Oct. 29, 2020) (defendant presented extraordinary and compelling reasons for release where his age and serious health conditions posed an increased risk of severe illness from COVID-19 and his pre-*Booker* life sentence for conspiracy to distribute methamphetamine and illegal reentry was far more severe than he would likely receive today).

Second, the court considers whether the sentence imposed is unusually or grossly lengthy in comparison to sentences currently imposed for similar or more serious offenses. The average sentence imposed from 2016 to 2020 where the primary sentencing guideline is U.S.S.G. § 2B3.1, Robbery, was 118 months for an individual with a criminal history category similar to Myers's. United States Sentencing Commission, Interactive Data Analyzer, Average and Median Sentence Length, 2016–

2020, Guideline § 2B3.1, https://ida.ussc.gov/analytics/saw.dll?Dashboard (last accessed May 26, 2021). A significant portion of individuals sentenced under this guideline (forty-one percent), like Myers, received a sentence of 120-months or greater. *Id.* Keeping in mind that Myers's use of a firearm during and in furtherance of the robberies carries a mandatory consecutive 84 month sentence and the sheer number of armed robberies Myers planned and committed as part of this scheme, the court does not believe the sentence Myers is serving is unusually or grossly lengthy in comparison to similar offenses. The court acknowledges that Myers's co-conspirators served significantly lesser state sentences in connection with the conspiracy, but given the differences between federal and state sentencing regimes and Myers's leadership role in the conspiracy, the court does not weigh this factor heavily in considering whether Myers has presented extraordinary and compelling reasons for release.

Third, Myers has served the vast majority of his sentence, and has a release date of October 17, 2022.

Fourth, other mitigating characteristics provide some support for finding that Myers is entitled to relief. Myers has built an exemplary institutional record over the last twenty years. He has no disciplinary record, and he has maintained employment while in the BOP in addition to working as a suicide watch companion and taking a significant number of courses. (*See* ECF 100-6, BOP Progress Report, ECF 100-9). And the court also considers that Myers was a young adult, between twenty-three and twenty-four-years old, when he committed the offenses at issue.

Considering these factors together, the court is not persuaded that Myers has presented an extraordinary and compelling reason for release. While the court certainly commends Myers for his remarkable post-sentencing accomplishments and acknowledges that he has little more than a year left remaining on his sentence, the court does not believe the sentence imposed was grossly disproportionate or excessive even by today's standards. Myers's argument thus amounts to a request for release based almost entirely on his compelling rehabilitative efforts. Congress, however, has

dictated that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. §944(t). Considered together, the circumstances presented by Myers do not justify a reduction of sentence under the statute.[2]

## CONCLUSION

For the foregoing reasons, Myers's motion for compassionate release (ECF 100) will be denied. The associated motion to seal (ECF 101) will be granted to protect the confidentiality of personal information. A separate Order follows.

　6/11/2021　
Date

　/S/　
Catherine C. Blake
United States District Judge

---

[2] As the court finds no extraordinary and compelling reasons exist for a sentence reduction, the court need not address the 18 U.S.C. § 3553(a) factors.

9